We'll hear argument this morning in Case 12-751, Fifth Third Bancorp v. Dudenhoeffer. Mr. Long? Mr. Chief Justice, and may it please the Court, a fiduciary's decision to do exactly what an employee stock ownership plan is designed to do, and what the plan requires by continuing to offer employer stock as an investment option, is presumptively prudent. Statutory language, trust law, congressional policy, and practical considerations all support this result. You want us to say that we have sort of a coach class trustee. We're all traveling in coach class when we have an ESOP. Once we go down that route, how do we define what the duties of the trustee are? Well, we're not asking for a coach class trustee. I mean, we're saying to look at the statutory definition of the duty of prudence in Section 1104a1b, which says that the duty of prudence must take into account the character and aims of the enterprise. So when we talk about ESOPs, we're talking about a pension plan of a very specific kind. It is designed, the deficit. Sotomayor This plan didn't require you to invest solely in employer stock, did it? They gave you the option to do it. And to go above the 10 percent. But it didn't require you to buy only employer stock, did it? Well, well, ERISA, the statute, requires that an ESOP invest primarily in employer stock. This particular plan, like many plans, requires that all of the assets in the ESOP be invested in employer stock, except the amount that needs to be in cash for short-term management requirements. So Congress both — Sotomayor Could you point to the part of your plan that did that? Because I looked at it, and I didn't see the plan requiring 100 percent investment. If, Your Honor, if you look at page 735 of the joint appendix, you'll find in part 3.3, it states, however, in all events, the fifth-third stock fund as described shall be an investment option. And then if you look on 736, and then continuing on to 737, it says that the fifth- fund shall be invested primarily in fifth-third stock. It says it may also be invested in short-term liquid investments to the extent the administrator determines they're desirable to accommodate expected short-run liquidity needs. But then it says the trustee shall have no discretionary authority to sell fifth- third bank corp shares or refrain from acquiring additional fifth-third bank corp shares with funds not held for short-run liquidity needs. So we think that's — Sotomayor They use the word primarily. There's an allegation here that you should have stopped buying stock once you understood that there was a serious condition in the company, that you breached your duty of loyalty, not of prudence. What do you do with that allegation? Well, our — what we say is that these duties, again, we're not asking for coach-class duties. These are first-class, if you will, duties, but they have to be understood in the context of this special kind of plan with special purposes. The purpose of an ESOP is to own company stock, to give the employees a piece of the rock, an ownership interest in the company. And so when the issue is, as you're posing it, Justice Sotomayor, at what point does a duty of prudence or a duty of loyalty, either one, require the trustee to break the plans of the term, deviate from the plans of the term? Sotomayor It doesn't say you have to — it says primarily. It doesn't say you have to continue buying. Well, again, I mean, I quoted the language. As we read the plan, and I think the government agrees with us on this, the instructions of the plan are to invest all the money in fifth-third stock, except as needed for short-term cash requirements. Now, there is the duty of prudence, and we're not asking for a second-class duty, but we think in this context, given this special kind of plan, what that duty means is, can the purpose of this— Ginsburg But, Mr. Long, there's no presumption written into the statute. There is an exception from the diversification requirements that occur in ESOP. The whole object is to buy the company's stock, and so you don't need to diversify. But apart from that, the statutory requirement on loyalty and prudence is undiluted. And so I don't know where this presumption comes from. It's not in the statute itself. Long, Jr. Well, we do think it comes from the text of the statute. It comes from the duty of prudence itself, which looks to the character and aims of the plan, and then in Section 1107d6, an ESOP is defined in ERISA to be a plan that's designed to invest primarily in the employer's own stock. So we think that defines the special character and aim of the plans. Congress has also spoken to this in other statutory enactments. Kagan Mr. Long, I think it— Scalia Section 1104 of ERISA, which this plan is not exempted from, says that the fiduciaries must manage a plan, and I quote, "...for the exclusive purpose of providing benefits to participants and their beneficiaries." Do you acknowledge that that's binding on the— Long, Jr. It is. And the government adds the word retirement before benefits. And they say an ESOP must be managed exclusively to provide retirement benefits, but that— Scalia No, I don't add that. I'm just saying providing benefits. I mean, that's, you know, that's quite different from running a plan to own stock in the company. That's not the basic purpose of it. Long, Jr. Well, Justice Scalia, plans, ERISA plans provide different kinds of benefits. Pension plans themselves can provide death benefits, hardship benefits, disability benefits. So if the benefit is stock in the company, a piece of the rock, you know, the duty of the fiduciary is to manage that as best as it can be managed to produce the largest benefit for the participants. But it's not to go back to your question to say, well, you know, it looks like some other investment would be a better investment this week or this month. Kennedy Is there anything in trust law or the common law that allows us to define benefits that way? Long, Jr. Well, I mean, I don't think we're asking for a special definition of benefits. We're just saying that what this plan in trust law does say, the set law has a great deal of leeway to define the benefits that are being provided. This is a particular kind of benefit, though, that Congress not only authorized but has strongly encouraged. I mean, employers are strongly encouraged to offer this benefit. So to say that prudence or loyalty or any of these fiduciary duties requires a sort of continuous monitoring of the company to see whether this is no longer such a good investment. Scalia You say the benefits referred to in it? Providing benefits to participants. And you're saying the benefits to participants is their ownership of company stock, including worthless company stock. Long, Jr. Well, no, not at all, Justice Scalia. I mean, the idea is that the company stock is valuable and the hope is Scalia But when it ceases to be valuable, it seems to me you're not Long, Jr. And we agree, as every court of appeals has held that has looked at this, all seven, that there does come a time when the purpose of the ESOP, of allowing the employees to build an ownership stake in the company, can no longer be realized because the company is in serious peril, serious jeopardy. Kagan But there are occasions, Mr. Long, outside of that very narrow category of cases that you define, in which the stock is going to be way, way, way overvalued relative to what the fiduciaries know is the company's actual value. Let's just say the market price is four times more than the actual value, and the fiduciaries know that because of inside information that they have. It just sort of defies language to say that some prudent person would retain the investment in that kind of wildly overvalued stock, doesn't it? Long, Jr. Well, I mean, if I could take that in several steps, I mean, that material overvaluation standard, which no court has ever accepted, we think, is unworkable. I mean, first of all, before you get to the inside information, which I think is the kernel of it that's left at the end, if you have a stock that is traded on an active market, you really can't tell the fiduciary, absent possibly inside information, well, you need to outsmart the market. Kagan No, but I'm talking about a case in which the fiduciary has inside information that enables him to know that the stock price is way overvaluing the actual value of the company. Sotomayor But when you get to that point of the analysis, and this is what all the courts have recognized, you have to then bring in securities law, and you have to recognize to trade on that inside information would violate securities law. So prudence or loyalty cannot require a violation of securities law. So what are the other options? You could halt trading. That would not itself violate securities law. But that could do great damage to the participants if the company's own ESOP said, well, we think something is so wrong that we're shutting down the ESOP.  Well, I suppose it could, but a prudent manager might say that it would do greater damage to the participants in the plan to enable this misinformation to exist and to keep putting, to keep buying stock, to keep putting more and more of their retirement investments into something that is really overvalued. Sotomayor Well, I mean, our point is that that public announcement that the ESOP has stopped allowing purchases of company stock could cause a sort of collapse in the stock price that would be terrible for the participants, and saying that prudence requires that. Kagan Well, you assume the truthful information will out in the end. And is it better to keep on putting more money into something that is, you know, is really not a good investment for the participants and their beneficiaries? Sotomayor But by, you know, stopping immediately, you could cause even greater harm. But I think your initial question Sotomayor So what's wrong with following the law and disclosing that material information to the public and stopping the employees from losing more money in worthless stock? Kagan And I think that's ultimately Sotomayor Or almost worthless. Kagan That's ultimately where the government comes in. Now, we've moved a huge distance from let's, you know, shut down the ESOP to let's release information. But there we would say, again, we think you have to consider this in connection with securities law, that if you announce, well, there's this sort of general duty to release information, I mean, first of all, that would be quite a big change in ERISA. There are many specific requirements for disclosure of information in ERISA. Kennedy It's just background information for this point you're discussing. Can you tell me, is it a very common practice for the directors and officers of the company themselves to be the trustees? I had just assumed that that didn't happen much anymore. Can you just tell me, because a lot of these problems would be taken care of, insider information and so forth, if there was an outside trustee. And I assume, tell me if I'm wrong, that the reason for the company themselves to do it is because it saves money. It's cheaper than hiring an outside investment. Maybe I'm wrong about that. But can you just tell us what the landscape is? Kagan First of all, it is common. So this happens quite a lot. You know, second of all, this idea of, well, we could appoint an independent trustee would not really solve all the problems, because then you have to have a monitoring trustee who would have to give the independent trustee any inside information that they had. So the government's suggestion is, well, okay, you get a low-level employee to be the monitoring trustee. Well, that could itself violate ERISA. If you had somebody so low down that they wouldn't know anything, that also could be a violation. So it's — Roberts I'm sorry. So it's really not a solution. But it is common to have the officers of the company, and I think it's not just to save money. It's because it's a very important part of what the company does, and they want to have their top people running it. Roberts I mean, the dilemma we're talking about, which is you've got inside information and if you do something with it, it's going to hurt the beneficiary. I mean, isn't that just a reflection of the fact that these are really bad investments? I mean, you're putting all your eggs in one basket. Your job depends on the company and your retirement depends on the company. So that's why you're in this awkward position of saying if the company's doing something bad, you know, having inside information that should be disclosed because it affects the stock price, then it's going to hurt not only the company, which is you, but also your retirement stock. Well, I mean, first of all, it's quite right that an ESOP, because it's totally undiversified, is not by itself a good retirement plan, and we think that just confirms that the special nature and aims of an ESOP is not solely for retirement benefits. But it is a purpose, Mr. Long, isn't it? You said you quoted the statute. The statute just says benefits. But isn't the plan — doesn't the plan itself mention retirement? Oh, yes. And the hope, of course, is that these plans will produce lots of retirement benefits. The Fifth Third plan, for long periods of its history, has been extremely successful at producing retirement benefits. Our basic argument is, though, that because of the nature of this plan, because it is linked to the company stock, and because Congress recently looked at this exact issue after Enron and said we want employees to have choices, but company stock can still be a choice, and we actually encourage that, that you don't shut it down as soon as there's trouble. Why do you need a special rule for ESOPs? I mean, the factors that you mention, it seems to me, apply to any trustee who's managing. You say, oh, you should have sold because the stock was overvalued on the stock market. Well, how is the trustee supposed to know that? Is he just going to outguess the market? Right. Absolutely. Surely you don't demand that a prudent trustee outguess the market. Okay? So if it's not the market that's overvalued, it must be inside knowledge that inspires him to know. And I want to come back to that. And you have the same problem about not being able to use that inside knowledge. You can't use it. And let me come back to that. So why do we need a special rule for ESOPs, I'm saying? All the points you make apply to any kind of trustee, whether it's only company stock or not. Why do we need a special rule for company stock operations? Well, because if it were just an ordinary investment where the purpose really is just to maximize retirement, if it's there, you do look at the risk-return ratio and the expenses. No, but you have the same problems that you justify doing nothing for the ESOP justifies doing nothing in the other plans. Namely, you can't expect me to outsmart the market, number one, nor can you expect me to use my inside knowledge. That violates the securities laws. So those are your two points. But it seems to me those points apply. We don't have to adopt a special rule for it. But then, Justice Scalia, we are agreeing with the lower courts there is absolutely a duty of prudence. We don't deny that there would come a point when a prudent ESOP fiduciary But even in saying that, Mr. Long, you have a category where you would say the duty of prudence applies, and it's this category where the company is on the verge of collapse. But even there, you would face the exact same securities law problems that your saying should preclude the government's test. Because there, too, you would have this kind of I don't know what to do, I'm between a rock and a hard place, the securities laws prevent me from selling on inside information, the same problems apply. Well, no. What we're saying is using public information, the chances that the company is going to be able to provide employee ownership for the long term may become so low that a prudent fiduciary would decide to shut it down. But I do want to answer your question on inside information, because I think that's the nub of it. And you raise the point of the fiduciary actually knows the inside information. Don't they have to do something, make it public? We talked about the securities law problem with trading on it. The government says, well, just make it public. Just release it to the public. There we think the problem is, first of all, that that would create this new sort of general ERISA duty to provide information when it's not spelled out in ERISA, you know, which has very specific requirements. But it's not an ERISA responsibility. It's an SEC responsibility. It's a 10b-5 responsibility. Aren't you supposed to disclose any information that a reasonable investor would release? And that's really exactly our point, Justice Sotomayor. This is — if there's inside information that has to be disclosed, the securities law provides a complete legal regime for this. The government even agrees that in terms of the timing of disclosure, the SEC timing rule should govern. Sotomayor, so what's wrong with a rule that simply says a fiduciary has to do whatever it's possible to protect beneficiaries within the bounds of the law? And so if the law required you to disclose it and you didn't, you've breached your duty of prudence and of loyalty because you've protected the company but not the beneficiaries? It sounds good, but I think it would create serious problems. I mean, you would have then two sources of information about the company. The ESOP fiduciary, which you'd be saying would have an independent duty to decide when it thinks there's been some material misstatement or some inside information and the company, which could create great confusion. You don't — you have an absolute duty to the beneficiary. Well, but the — I guess the point is, Justice Sotomayor, from the — the fiduciary can say, look, if there's been a securities law violation about disclosure or material misstatements, there's a securities law remedy for that. And the planned participants will get that remedy. Well, there might be a security — In an ESOP, can the fiduciary take into account the interests of the participants as employees as opposed to their interests as investors? It doesn't seem to me that those will necessarily always be the same. And there may be situations in which something that would be potentially good for the participants as investors would be quite bad for them as employees. They want to keep their jobs. They don't want the company to stay afloat. Can that properly be taken into account, or is that outside of the ban? I mean, I don't think you have to do that. I think, you know, you look at the interest of the participants, who are both employees and participants in the plan, you know, so — so I don't think it's necessary to say, well, we're not even looking at them as participants in the plan. We're looking at them only as employees. We think — No, I'm not saying only as employees, but I'm saying, can you take that into account at all? If you're in the situation where stopping trade — stopping purchases in company stock would be a signal that would potentially trigger bankruptcy and liquidation for the company, can that be taken into account? It might not be in the best interest — if the — if the — if these participants were simply investors, it might be in their best interest to stop buying this stock. But if taking that step would have the consequences that I mentioned, it might be very much not in their best interest as employees. Well, I mean, I think I'd say that would be one way to sort of work this out. That's another way of getting to the bottom line that we think is correct here, which is that an ESOP is a special kind of pension plan, and the whole nature of it is to own company stock — Well, how do you find — define the standard or the duty that's responsive to Justice Alito's concern? And I had the same problem. Let's assume that trustees in non-ESOPs plan have a duty to maximize returns and provide stable investments. Is it somehow different when it's an ESOP? Yes. I think it is. And if so, what is the duty? How do you define it? I think the duty is to maximize the returns for this special kind of a vehicle, which is a vehicle that owns stock in only one company, the employees' company, and for reasons — this kind of goes to Justice Alito's point, but in a different way — for reasons that go beyond just the returns. It is because it is the employees' company. Congress thought it was beneficial for many reasons to encourage employee ownership of companies. And so you don't look to whether, you know, this appears to be a bad investment as compared to a mutual fund. Well, if I'm the trustee, I don't know what my duty is, based on your answer. I don't know what I'm supposed to do. Well, I mean, the courts of appeals have had a fairly uniform approach to this for now almost 20 years, and it has — it has not been causing a great deal of trouble. The approach they've all been taking is that because of the special nature of ESOPs and, you know, when the plan requires that all the funds be invested in the ESOP at least, that's what the fiduciary must do, and that is presumptively prudent. It's not necessarily prudent, and there would be — you know, the way we think the courts have best expressed it, if — and they draw this from trust law — if the special aims of this plan, employee ownership, can no longer reasonably be achieved, then prudence requires the plan to be shut down. That is not a bright-line standard, but that is the standard the courts have adopted. I'd like to save the balance of my time, if I may. Thank you, Mr. Long. Mr. Mann. Thank you, Mr. Chief Justice, and may it please the Court. I think what I can most usefully do is talk first about the question of the relevant so-called rock-and-hard-place problem, which we think is essentially a confession of disloyalty by my most able opposing counsel. First, the nature of the benefits in the statute, the reference to benefits in 404a2a is quite plain. It refers to the basic type of plan that's covered by ERISA, which is an employee benefit plan, as defined in section 1002.3. And I think it would help if you raised the podium a bit so you're closer to the microphone. Section 1002.3 describes employee benefit plans, which are the subject of ERISA. And there are two types of employee benefit plans as defined in that section. There are plans that provide welfare benefits and plans that provide pension benefits. And I think there's no doubt that the benefits that must be the exclusive purpose of an ERISA plan are those benefits that are required to be governed by ERISA. And I think we need to remember the grand bargain of ERISA reflected in the statute is if employees are going to provide these kinds of benefits, the people that manage the retirement and welfare plans must accept fiduciary duties. That's the bargain of ERISA. If you're going to provide these kinds of benefits, you have to accept fiduciary duties. And the sole purpose of the plan under the statute is to provide those benefits. Now, I'd like to talk about this idea of this rock in a hard place that was first raised by Justice Kagan. I think that the best way to think about this is essentially what the petitioners are saying is if I decide to put myself in a position where I owe duties to two different people, my employer on the one hand and the beneficiaries of the plan, because I've put myself in a conflicted situation, it's perfectly right for me to just do nothing. That's not the way it works. You can imagine a lawyer that undertakes to represent two clients with conflicting interests. If it comes to the point where the interests are inconflictable, the lawyer has already made a mistake. The lawyer cannot simply say, well, I choose to protect one client, not the other. They have to be something, and they're going to violate some of the standards. Breyer. With the problem, can you give me any example of any case? There may be so many you can't even give me your best one. But trusts have been around for probably 800 years. And can you give me an example of one where a court said a trustee has breached his fiduciary obligation because he failed to use inside information? Oh, no. I think there probably isn't such a case, but I would argue. You think there is not such a case? I think there probably is not such a case. If there is not such a case, what's the problem? Because what's the rock and the hard place? The person has an obligation to act prudently in respect to the fiduciaries, to the beneficiaries, of course. But he cannot, irrespective of that, have an obligation to use inside information. End of matter. What's wrong with saying just that? I'm not sure what you mean by that, but I'd like to. What I mean by it is just what I said. There is no rule of trust or ERISA law that you can breach a duty to a beneficiary by failing to use inside information, period. I don't know what the SEC's brief is. I'm going to ask the SEC what their opinion is, because they don't seem to appear on this brief. I think I would respectfully disagree with that, and I think it's important to understand why, Justice Breyer and Justice Kagan. The answer is there's not been a case ever holding the contrary, but you yourself disagree with it. Now, what is the reason you disagree with it? That is because the courts of appeals, unanimously, as Mr. Long says, have held that the trustees of these plans have no duties at all. And so if trustees have no duties at all, it's, of course, quite difficult for them to breach the duties. Now, my point is that the courts of appeals have held that the trustees have no duties at all. I'm sorry. I'm saying, go back to England, there are many cases where settlors have said what kinds of things you should invest in, and they invest in them. They have inside information that it is a bad investment. Is there any case that says they have a duty of obligation not to do what the settlor says? I wouldn't have been surprised if you found some cases, but I'm also not surprised that there aren't any. That's why I asked the question. With respect to that particular question, I did not understand your question that way, and I don't – I can't say whether there is or has never been such a case. But what's important from our perspective is the trustees in this case undertook to represent conflicting interests. Ordinarily, when people undertake to represent conflicting interests – Sotomayor, let me just continue to Justice Breyer's question. There are some legal duties. I don't know of a trustee who has to break the law. They can't sell on the basis of inside information. That's a legal prohibition. I think that's clearly true, but I think they at the same time, at their peril, breached their duties of loyalty to those for whom they've accepted a fiduciary duty. And the – So your claim rises and falls on the fact that you think they're – they've breached their duty of loyalty by having the inside information, and – or exactly what is your claim? What could they have done that wouldn't breach the law? My claim does not rise or fall at all on that, and I don't think there's any reason why you need to address that, given the particular nature of the complaint. The complaint in this case alleges that the trustees knew or would have known if they had undertaken a reasonable investigation of the type that is required by ordinary principles of prudence, that the stock was materially overvalued, and that the stock was a much more risky investment than it was at the time that the plan was designed. So what would they have done? So what did they have to do, then? You say they can't sell the stock based on that information. What are they supposed to do? Or is it your argument they just never – you never should have insiders serving as trustees? You always have to have an outsider running these ESOPs. Well, I wouldn't say that you always have to, but I do think that the situation is quite parallel to the situation that corporate directors face when they come into a conflicted situation in the corporate context where directors ordinarily are protected by the business judgment rule. If a situation arises in which their interests patently diverge from the interests of the shareholders, they don't simply decide to represent both interests but pick one over the other. They instead step aside in a point and, you know, allow independent people to represent the shareholders. So you're basically saying that if it's not flatly prohibited, it's very unwise. It generally shouldn't happen. You're putting yourself in an impossible position if you are an insider and you're going to serve as the trustee of an ESOP. Well, I think it's the plain implication of Justice Kennedy's opinion in Glenn, and the majority opinion in Glenn, that the structure of the fiduciary and the relationship to the trust being conflicted should raise a red flag. So here, Wayne, you say, I am totally with you on this. We walk into the trustee's office. It's like Ralph Nader investigating the FTC years ago. There is someone asleep on the sofa. In his inbox is 10 feet of papers telling him about all public, telling him about the corporation's condition. It's apparent he's never read them. If he had read them, he would have taken action. Of course you would have a case, I would think. But that is our complaint. But you want to go beyond that. No. Our complaint is they have the information in Step 1. They didn't do anything. Step 1, they did not. Not just information. Remember, I carefully said all this was publicly available information. You want to say it also applies when it's not publicly available information. Am I right or wrong? You are correct. I would also like to say that, but I would like to point out our complaint alleges a large amount of information that is, one, public, two, false information promulgated by the petitioners, the falsity of which perhaps could have been undertaken by considerable, discovered by considerable investigation. And instead of conducting a reasonable investigation that a trustee for a billion dollar pension plan ordinarily would conduct, and just to be clear for the early discussion, this is not a plan that is invested solely in fifth-third stock. This plan has a variety of investments. There is one particular fund that has $100 million to $200 million of fifth-third stock. Kennedy. But suppose you were a legislator or a congressman. You were absolutely committed to the idea that it's important and salutary to have employees own stock in the company for which they work. How would you write the statute? I think Congress has done a great job of writing the statute. Congress wrote a statute that tells employers you can set up these plans and the trustees don't have to diversify, which is inherent in having a plan that is employee stock. Kennedy. Well, once you say the trustee doesn't have the duty to diversify, it seems to me you're living in something of a different world. I think that that's right, and that's why we believe that this standard of prudence is affected by the fact that it's an employee stock ownership plan, that there's a portion of the fund that owns employer stock, but that doesn't mean if there's no duty of loyalty, it shouldn't affect that at all. Well, but affected is not quite enough. I mean, this trustee's job is to buy the company's stock. In that particular fund, it's 100 percent other than the money you need to buy and sell. So he has the easiest job in the world. He gets up in the morning and says, I think I'll buy some of this company's stock. That's what he's supposed to do. And I think that what every court of appeals has recognized is that that is by definition prudent, because that is the settler's objective, with one exception. If everything's going, you know, south and the company's collapsing, well, then he does have the obligation to do something. So I don't understand how you can say that he has breached a fiduciary duty of prudence when the people investing in this ought to know what they're going to get is the company stock. I think it's — I'm glad that you asked that question, because I think that's central to the disagreement between Respondents and Petitioners. Now, the first answer, of course, is that you can't look at the statute without thinking that Congress had a different understanding of the duties. Now, if I just could mention a couple of things about the statute. It's not only the point that Justice Scalia made, that Section 404a2 specifically carves out some duties but not others. It's also that it only forgives prudence to the extent of diversification, which means that prudence has to mean something out of diversification. And then it still further limits the scope of forgiveness. It only forgives it with respect to the acquisition or holding of qualifying employee securities, employer securities, which is much narrower than the fiduciary duty defined in Section 403 to manage and control the assets of the plan. But what's important for our purposes, it would not — you asked the question, although I think the statute resolves it — it would not have been sensible for Congress to tell the people that manage employer stock ownership plans that they have no duties of prudence or loyalty to the employers whose retirement funds are at stake. But what is exactly the duty of prudence? Presumably, you buy — you invest the funds in the company's stock, whether it's going up or going down, right? If you have the funds, all you can do is invest them. If the stock is down half a point or whatever, you still buy it, right? Okay. So I'd like to say first, there is the duty of loyalty, and it does breach the duty of loyalty, for example, as the Court said in Verity, and I don't think it's controversial, to lie to the beneficiaries. Well, what's the answer to my question? With respect to the duty — so the duty of loyalty is enough to sustain our purpose. No, no. I didn't ask a question about the duty of loyalty. I asked a question of whether or not the trustee is imprudent because he buys the stock because it's gone down, you know, gone down 10 percent. Okay. The most fundamental thing about the duty of prudence that you would get from the restatement of trust is that the outcome of the investment is not what's relevant. What's relevant is, and Justice Scalia, when he was on the D.C. Circuit, wrote a long opinion in FINK, which discusses this in detail, and you'd see the same thing in the comments to Section 90 of the restatement. The most important thing is what you might call procedural prudence. Okay. These people are managing a fund of a billion dollars. The relevant question is what would a reasonable trustee of a billion-dollar fund have done to investigate the situation? Would someone with a billion-dollar fund and $100 to $200 million of fifth-third stock have routinely been collecting information about the nature of that investment, whether they should take some action? It well might be. It well might be that they should not, in a flighty or haphazard way, dispose of the stock because that's the baseline of this plan is to invest in the stock. But that's entirely different from doing absolutely nothing, not telling the employer's information. Alito, does the trustee have a duty to acquire inside information? Could a trustee say, I don't want to know inside information, I'm going to put myself in exactly the position of an outside trustee, so I'm going to take into account only public information, I'm not going to do an investigation? Our position is that the duty of the trustee is to behave as a prudent fiduciary would behave. And if the trustee is unable to do that because the trustee has conflicting interests to serve, then the trustee is violating the duty of loyalty and should arrange his attorney's appointment. Alito, what is the answer to my question, assuming that it is permissible for an insider to be in this position? Can the insider behave like an outsider? I think it's plainly the case that if the trustee does not undertake the investigation that a prudent fiduciary would take because of their concern about acquiring inside information for the employer, then they would violate the ordinary standard of prudence. Roberts. Well, can we talk concretely, instead of just saying, well, they've got to do what a prudent fiduciary could do? Are they allowed to take into account the impact of a decision to stop buying on the beneficiaries? The stock is going down. If the trustee stops buying, that's going to cause a drop in the value of the shares, and that's going to hurt the beneficiaries. So what does he do? Does he say, I shouldn't buy anymore because I think it's going to go down some more, or should he say, I should keep buying because otherwise all the holdings and this is all they're invested in, their holdings are going to go down? I think the obligation of the fiduciary at all times is to behave prudently and manage the investment prudently. They might not. I asked for an answer to the question, and it's not going to help me to have this mantra that he's supposed to act prudently. I don't believe that the question is whether they must sell or mustn't sell. I think they have to decide, would it be in the — based on the facts we know right now, do we believe that this is a short-term blip and the stock's going to rise back up, in which case we — What happens is that the trustee, knowing that the company has announced an enormous oil strike, has happened to sit on a private meeting where three people come in and you say, yeah, there was an oil strike, but it's impossible to get the oil out. Ha, ha, we put one over on a map time. Okay. Now, what's that trustee supposed to do? I think I lost track of whether the oil strike was true or false. No, there's a false. He alone, and two other people, know that this oil is worthless. The market doesn't. It's totally inside information. What, in your opinion, is he supposed to do? I believe that the trustee violates the duty of loyalty and the duty of prudence if the trustee, believing that the stock is overvalued, in fact, does not take action to protect the beneficiary. Okay, so your answer is total inside information, he sells, right? I didn't say that. I think he needs to do something. I just don't see what the trustee is supposed to do. You have the company stock. By comparing it with other stocks, there'll be many investments that are just as good or better. When does he have to make the investment on what's just as good or better? I don't understand. I don't understand how we're going to implement what Congress wanted to implement. Well, we believe that the traditional fiduciary standard is not that hard to implement. It's a standard that's been imposed on fiduciaries for centuries. It's a standard that all managers of trusts have undertaken. The only thing that's really different about these particular trustees is that they're managing funds that are worth, you know, billions of dollars. Mr. Mann, you said you were going to deal with the rock and the hard place. But it's been put to you that if they — the trustee goes out and sells, that'll be a signal that things are bad with the company, so it will end up being worse for the beneficiaries of the plan. Well, we certainly believe that if the trustee's view, based on their information, is that selling the stock would be bad for the beneficiaries, then a decision not to sell is prudent. If the trustee decides selling would be bad for the beneficiaries, so we're not going to sell, that's a prudent decision. It might be right, it might be wrong, but if that's their decision, I think that's prudent. If the trustee decides selling would be beneficial to the beneficiaries, it might be right, it might be wrong, but if that's what they actively decide, then I think they need to do something. And that's our position. Now, the rock and the hard place, I understand that some of the justices disagree, but, I mean, our position on that is quite clear. The only reason Petitioners are between the rock and the hard place is they've undertaken to have interests that directly conflict with their fiduciary obligation to these employees' retirement benefits. There's nothing in the statute, there's no practical consideration that Petitioners have suggested, there's no reason that these funds need to be managed by insiders as far as we care. Ginsburg's argument is that if you have outside trustees, they have to get information. And if they get the information from an insider, then we're back in the same place. Well, of course, if you wait until you're in possession of information and you know the stock is overvalued, you can't solve the problem by stepping aside then. But if you set up the trust in the hands of an independent investment manager in the beginning, we believe that if you look carefully at the provisions of Section 1105C and D, you'll see that Congress has provided a great deal of protection for the person that appoints. Of course, it's true that if the person in the company that appoints a fiduciary knows that there's a breach of fiduciary duty by the investment manager, they're still liable. But what else could Congress possibly say? Congress couldn't write a statute that says people that knowingly breach fiduciary duties of the employees are not supposed to be liable. So the status of the trustee, whether it's an interested party or a disinterested fiduciary, is disclosed to the beneficiaries, I take it, at the outset. They can decide that they don't want to invest in that particular fund, and there are nine other options, because of that potential conflict? Yes, they are advised of that. Their ability not to invest in that particular fund is limited during the class period because all of the matching contributions for all of the class period went directly into this fund. So employees would have to take the active step to remove them from the fund promptly. But if they wanted to, they got 4 percent matching funds if they were in that fund. That is correct. I think the most important thing for us to emphasize is the point of ERISA is that if an employer is going to provide employee benefits, the people that manage those benefits have to accept fiduciary duties. There's nothing unusual about that. The standard is not unworkable. It's a standard that has been provided for centuries. And if the only reason that the people managing the fund can't comply with those duties is because they have obligations to the employers, then that is not something ERISA can tolerate. Thank you. Thank you, counsel. Mr. Kneedler? Mr. Chief Justice, and may it please the Court. Several points at the outset. Justice Alito asked about taking into account the interests of employees as employees. But Section 1104 speaks in terms of operating the plan for the exclusive purpose of providing benefits to participants and their beneficiaries, which means the interests of employees are taken into account only insofar as they are participants in the plan, not more generally. And the second and related point I'd like to make with respect to that is the use of the word benefits in 1104a that says that the plan must be operated for the exclusive purpose of providing benefits to participants. We have that on page 6a of our petition appendix. Further up on that is the definition in 1002.34 of an individual account plan, which is the need for a stock drop in and of itself. I don't think can prove a lack of prudence. Because do you agree with that? We — yes, we do. I mean, there are situations in which there may be additional unusual circumstances, but simply a stock drop would not. But I think that, as Justice Scalia pointed out, that would also be true in a diversified plan. Exactly. It's true almost anywhere because you can't outsmart the market. So we're not insisting that a — that a fiduciary, in order to be prudent. So how do you deal with what's been vexing us, the issue of what a fiduciary should or can do when they're an insider and have only inside information, not public information? Right. So what — where is the breach of fiduciary duty? Where is the breach of loyalty? What can it consist of? And what does someone have to prove in a complaint? Because this has to do with a pleading presumption and a merits presumption. Right. If this is a — if there's a substantive principle here, that would have to be pleaded. If it's an evidentiary presumption, as the Sixth Circuit said, that would not have to be pleaded in the complaint. But several points on that. First of all, in response to Justice Breyer's question about inside information, we point out on page 31 of our brief, quoting Scott, that if — that if a fiduciary has peculiar knowledge about a corporation's stocks' value, that is a factor to be taken into account in terms of the way the trustee exercises his responsibility. Well, the — the union brief says the thing to do in that situation is, without saying anything, turn the trusteeship over to a person who doesn't have that knowledge. That takes care of the problem. And the reason I raise the question, of course, is there are trillions of dollars probably managed by ERISA funds. I don't know what percentage of those involve stocks, not this kind, this kind of — maybe you know. But my guess is a lot. And obviously, before I wrote a word that said what you have to do or don't have to do with inside information, I would like to know directly, not indirectly, what the SEC thinks. And maybe you can tell me, but the SEC isn't here in — at least, there's no SEC lawyer that signed your brief, so I don't know the extent to which that's — This is primarily a labor case. It might be. You might have a good reason for it. Right now, I am supposed to write some words or join some words. And those words will tell trustees of possibly — I have no idea, but maybe hundreds of billions or maybe billions, anyway, of assets in the stock market, what they're supposed to do when they learn some inside information that affects the company's stock. And I hate to tell you, I don't know anything in this area about what the likely effects are, and therefore, I'd like to know what they think. And the closest I came to it was the AFL-CIO brief, frankly, where they said what you're supposed to do here is turn this over. So what do I do? Well, that is, of course, one option. If circumstances get very bad, this was true in the WR Grace situation, the trust — the inside trustees appointed an outside trustee to do an evaluation. But the first step that Mr. Mann pointed out is, I think, a fundamental one that should not be overlooked here, and that is that the fiduciaries have an obligation to actually exercise their discretion and actually investigate. And here the allegation is that these trustees did not even do that. So if you're going to be giving deference to a trustee under an infusion of discretion — Sotomayor, investigate what? The nonpublic information? Investigate the consequences of the nonpublic information? This would be true of public information, too. This is not a plan like this, even though it is exempt from requirements of diversification, there are still prudence duties, which include investigation and monitoring of the investment. So the fiduciaries of a plan like this do have an ongoing obligation to investigate and to keep themselves apprised of how the company is doing. But what exactly, concrete terms, what do you do as the trustee? You have this information, inside information, that says that the stock is overvalued. Do you sell, in which case the beneficiary's holdings go way down and they sue you? Or do you not sell, in which case when the information comes out, the beneficiary sue you because their value goes down? What are you supposed to do? In the category of cases we're talking about here, and these are the ones that are of the greatest concern to the Department of Labor, the stock is materially overvalued because of the inside information. In that situation, and I think this is the point Justice Kagan was making, it would ordinarily be the right thing to do to sell. The truth will out eventually, but and there may be a precipitous drop. The stock has already been at a level and stock has already been purchased at an inflated level, which means that the employees are not getting what they were entitled to. So you should sell. Alitoson. But you're saying you should sell based on the inside information? No, he can't sell. He can't sell on the basis of inside information. He could, I'm sorry, he could stop purchasing. Breyer, but that market, we'll see through that in about two seconds. But the, the, that isn't really my question. It's a numerical question. What, what, I, you know, I was making up numbers wildly. What are the actual numbers? That is, approximately how much in assets is accounted for by ownership of the company's, you know, this kind of a plan, where you buy the company's stock? I, I don't know the amount of assets. As I, as I recall, I, I think there are perhaps 12 or 14,000 ESOP plans. Some, about half the employees covered are in publicly traded, in publicly traded corporations. I, I want to make another point in terms of the purposes of an ESOP. The, the, Congress has provided for investment in, in employer stock, but it has not accepted the fiduciaries from the general duty of, of prudence. The, the statute, the statute makes that clear. And in, in 2006, Congress provided that employees of publicly traded companies must be given the right to diversify, which reflects the judgment. Kennedy, your, your argument, at least according to the Petitioner's brief, and I think they're correct, you, you, you go away from the purity standard. You, you have your own standard, whether or not it's materially overvalued in this instance. Or are you saying that that's? Or inside, where there's inside information, and is it materially, is it materially overvalued? And there could, there can be circumstances. But, but then, but then you are creating a special standard, which is just what you're accusing the Petitioners of doing. Well, the, the question is what's the general standard of prudence? And it would always be imprudent for a diversified or nondiversified plan for the asset that they, or hold on to, an asset that they know to be, or should know with reasonable investigation is materially overvalued. Alito, let me give you this, let me give you this example. It, it, it's helpful to have something concrete here and not just general statements of, of about fiduciary duty. Let's say that the trustee receives inside information that someone has alleged that corporate office, a, a particular corporate officer has engaged in illegal conduct. And if it turns out that that conduct actually took place, that, that information if, that, that will cause damage to the company. But it's, it's, it hasn't been proven. It's, there's simply been an allegation. Now, what, at that point, what does the trustee, what do you think the trustee has to do? If that information were available to the public, let's say it would cause the price, the price of the stock to go down. So it's material, it's material information, but at a somewhat preliminary stage. What do you do? Completely stop buying the stock? You can't sell? Disclose the information? What is supposed to be done? Kneedlerer There is no absolute answer in that situation. Stopping buying might be the right approach. That's not uncommon, and there are blackout periods where, where plans and companies bar trading in the stock. But if it's material information that the securities law is required to be disclosed, there is no reason why the participants in an ERISA plan should be unprotected when that material information affects the stock. Alito But would that information have to be disclosed under the securities laws? Let's say there was no prior, no prior misleading statement regarding this matter. Kneedlerer It would have to be disclosed. Alito Eventually. Kneedlerer If it's major, it might have to be disclosed within 4 days under 8K. Otherwise, it would be quarterly or annually. And we are suggesting that disclosure obligations should be geared to what the securities law requires. Kennedy The Chief Justice indicated I can ask just one question. Is this a case in which we must decide what the fiduciary standard is, quite with that regard to inside information? Is inside information just an added issue in the case, or is it the key issue in the case? Kneedlerer We think in this case it is the key issue. The Court does not have to decide what fiduciary obligations the fiduciary of an ESOP would have in dire circumstances where you have a failing company or a mismanagement or something like that. We are focused here on inside information that materially enhances the value of the stock, overvalues it, and in that situation we think the fiduciary of an ESOP, just like the fiduciary of any other plan, has a duty of prudence not to remain invested in or to purchase materially overvalued stock. Roberts Thank you, counsel. Mr. Long, you have five minutes. Long, Jr. The ESOP Association brief reports at page 2 that there are $1.07 trillion in these employee stock plans, and we think really that's the key here. All of the courts of appeals, considering many cases, you know, with many different fact patterns, have not disagreed. There's no circuit split on the issue that we've spent all our time discussing this morning. The only circuit split is on whether this presumption applies at the motion-to-dismiss stage. The real point here is, as Justice Kennedy said, Congress strongly supports ESOPs. It wants to encourage them, so it can't be— Sotomayor I appreciate that, but if I'm listening to the government carefully and understanding its position, it's basically saying if there's been a violation of the securities law that a fiduciary knows, then why shouldn't it be liable both under the company, under 10b-5, and the director of the plan or the trustee of the company? I mean, it's a double remedy, but there's lots of things that provide double remedies. So if that person should have disclosed— Well, I mean, securities law will provide the first remedy, and if you're going to add an additional— Well, not as a trustee. It will against the company. Well, but the additional ERISA remedy in this ESOP context is going to create these tremendous problems. I couldn't begin to understand what the ESOP fiduciary was supposed to do in these circumstances. I mean, in terms of— Obey the law. I think that that's the simple answer. Well, but you'll create two different centers of communication now out of each corporation with an ESOP, the corporation's own statements, and then the ESOP fiduciary will have to come to independent— You know, they created the conflict. Well, I think Frank— I'm not shrugging my shoulder out of lack of sympathy, but out of reality, the loyalty is to the beneficiaries. If you're going to place someone there who comes to inside knowledge, you're going to create potentially a problem. Well, but I think your adversary was saying that's a self-induced problem, not one that the law should excuse you from following whatever the law is. Well, but two points. I mean, I would submit you should be very cautious about interpreting these duties in ways that will make ESOPs unworkable. And I think that would basically cause many companies to say we can't put fiduciaries in that situation, so we're not going to have ESOPs at all. And the, you know, again, because the special purpose of an ESOP is to give the employees a piece of the rock, ownership in the company. If the company is going through temporary hard times, even if there's a situation where there's some, you know, material misinformation that is out in the market, that may all be corrected in the long term. You know, in this case, if the fiduciaries had shut down the ESOP, they would certainly have been sued because they would have violated the plan terms. And the plan has done very well. It's gone up from $2 to over $22. So they might have had a very hard time winning that case because they would have been challenged. The prudence didn't really require you to shut it down. Yes, we were going through some severe problems, but we came through them. That's the razor's edge. That's the rock in the hard place. They're going to be sued, and unless you recognize this presumption that every court of appeals has recognized, to give the ESOP fiduciaries some leeway, they're going to be different from any other fiduciary in any other plan because it's the company stock, and if they, you know, if the stock goes down under this open-ended duty of prudence, they're going to be sued for not having anticipated that and done something, sold, stopped trading, put out information. But if they don't do it and the stock goes up, they're going to be sued for that. And in fact, you know, if you recognize the government's approach, there will be a whole new class of cases, which is if the stock goes up, the plaintiff's lawyers will be able to argue, well, the fiduciary should have anticipated that, and the participants who were selling and deciding to move over to the S&P 500 fund, you let them sell their stock too cheaply, and that's a violation. So it's unworkable, we submit. Thank you, counsel. The case is submitted.